**Dated: March 10, 2010**
**The following is SO ORDERED:**

_____
George W. Emerson, Jr.
UNITED STATES BANKRUPTCY JUDGE

_____

THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
_____

In re

KEVIN J. NAUGHTON,                                Case No. 06-24521-E
    Debtor .                                     Chapter 7

NORMAN P. HAGEMEYER,
Chapter 7 Trustee for Kevin J. Naughton,
    Plaintiff,
v.                                                Adv. Proc. No. 08-00261

MICHAEL D. NAUGHTON, et al.,

    Defendants.
_____

**MEMORANDUM OPINION GRANTING MOTION OF COMERICA BANK FOR
SUMMARY JUDGMENT**
_____

    These matters are before the Court on the Motion for Summary Judgment and Memorandum in Support thereof filed by defendant Comerica Trust Company of Florida as co-trustee of the Marguerite K. Naughton Revocable Trust ("MKN Trust"), in accordance with Fed. R. Civ. Proc. 56 made applicable in this Adversary Proceeding by Fed. R. Bankr. Proc. 7056, and the Response and Memorandum in Support filed by Norman P. Hagemeyer, Chapter 7 Trustee (hereinafter Bankruptcy Trustee) in the bankruptcy case of Debtor Kevin J. Naughton, Case No. 06-24521. This proceeding

arises in a case referred to this Court by the Standing Order of Reference and are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F).

This Adversary Proceeding was filed by Chapter 7 Trustee Norman P. Hagemeyer, pursuant to Fed. R. Bankr. Proc. 7001, seeking to recover several alleged transfers made by Debtor Kevin J. Naughton to the Estate of Marguerite K. Naughton, the Marguerite K. Naughton Revocable Trust ("MKN Trust") and the John B. Naughton Revocable Trust ("JBN Trust"). Defendant Comerica Trust Company of Florida, as Co-trustee of the Marguerite K. Naughton Revocable Trust (hereinafter "Comerica") was named as a defendant in the Adversary Proceeding.

## I. FACTS

The Court has reviewed the Motion for Summary Judgment and Memorandum in Support filed by Comerica, the Bankruptcy Trustee's Response and Memorandum in Support, Comerica's Response thereto as well as both Supplemental Briefs filed on January 19, 2010 and Comerica Bank's Response to Trustee's Supplemental Brief, filed January 28, 2010. The Court finds that the parties hereto have agreed to the following undisputed facts:

1. Comerica was the named successor Co-trustee pursuant to Section 9.1 of the Second Amendment to and Restatement of the MKN Trust, amended and restated March 14, 2000. (Memorandum in Response to Comerica Bank's Motion for Summary Judgment and Statement of Undisputed Facts, 4-5 at ¶ 1, Docket No. 70).

2. Upon the death of Marguerite K. Naughton, Comerica was then granted with all rights, powers and discretions as contained in Article 10 "Powers of Trustee" of the Second Amendment to and Restatement of the MKN Trust. (Mem. Resp. Comerica Bank's Mot. Summ. J. Statement Undisputed Facts, 5 at ¶ 2, Docket No. 70).

3. On or about October 17, 2002, Defendant Michael D. Naughton and Comerica, as co-trustees of the MKN Trust, filed suit in the United States District Court for the Middle

2

District of Florida against Debtor Kevin Naughton, seeking money damages in excess of $6,000,000.00, arising out of loans and monies obtained by him from Marguerite K. Naughton and/or the MKN Trust (the "Florida Lawsuit"). (Separate Defendant Comerica Bank's Memorandum in Support of its Motion for Summary Judgment and Statement of Undisputed Facts, 3 at ¶ 3, Docket No. 54).

4. Comerica was a named plaintiff and proper party to the Florida Lawsuit in its capacity as co-trustee of the MKN Trust. (Mem. Resp. Comerica Bank's Mot. Summ. J. Statement Undisputed Facts, 5 at ¶ 3, Docket No. 70).

5. On or about June 10, 2004, Judgment was entered in favor of the plaintiffs against the Debtor in the amount of $2,505,352.14 (the "Florida Judgment"). (Separate Def. Comerica Bank's Mem. Supp. Mot. Summ. J. Statement Undisputed Facts, 3 at ¶ 2, Docket No. 54).

6. After the entry of the Florida Judgment, the following individuals and entities entered into a Settlement Agreement and Mutual Release (hereinafter "Settlement Agreement"):

   i. Debtor Kevin Naughton,

   ii. The MKN Trust,

   iii. Comerica, as co-trustee of the MKN trust,

   iv. Michael Naughton as co-trustee of the MKN Trust and as personal representative of the Estate of Marguerite K. Naughton,

   v. The Estate of Marguerite K. Naughton,

   vi. MKN, LLC,

   vii. The Naughton Family L.P.,

   viii. The Naughton Children, L.P.,

   ix. The John B. Naughton Revocable Trust,

3

    x.    Trust B for the benefit of Kevin J. Naughton,

    xi.    Comerica as co-trustee of Trust B, and

    xii.    Brian P. Naughton as co-trustee of Trust B. (Separate Def. Comerica Bank's Mem. Supp. Mot. Summ. J. Statement Undisputed Facts, 3 at ¶ 3, Docket No. 54).[1]

7. The Settlement Agreement required Debtor Kevin Naughton to withdraw trust principal from Trust B and to transfer those funds into the Estate of Marguerite K. Naughton in satisfaction of the Judgment entered in the Florida Lawsuit. (Separate Def. Comerica Bank's Mem. Supp. Mot. Summ. J. Statement Undisputed Facts, 3 at ¶ 4, Docket No. 54).

8. The Settlement Agreement terminated Debtor Kevin Naughton's status, rights and interest as a beneficiary of the MKN Revocable Trust, the Estate of Marguerite K. Naughton, the JBN Revocable Trust, and Trust B. (Separate Def. Comerica Bank's Mem. Supp. Mot. Summ. J. Statement Undisputed Facts, 3 at ¶ 5, Docket No. 54).

9. Prior to its resignation as co-trustee, Comerica executed the Family Settlement Agreement ("FSA"), which was filed with the Circuit Court for Palm Beach County, Florida, Probate Division ("Probate Court"). The FSA contained provisions terminating both the JBN Trust as well as the MKN Trust and provided for the distribution of the assets of both trusts after approval by the Probate Court. The Probate Court approved the FSA on June 1, 2005. (Mem. Resp. Comerica Bank's Mot. Summ. J. Statement Undisputed Facts, 5-6 at ¶¶ 5-7, Docket No. 70).

---

[1] The Court is aware that the date which the parties entered into the Settlement Agreement is in dispute, but both parties have agreed that the date was after the entry of the Florida Judgment. The Court finds that the date of the Settlement Agreement is not a material fact which would otherwise preclude summary judgment.

10. Comerica resigned as co-trustee on July 27, 2005. (Mem. Resp. Comerica Bank's Mot. Summ. J. Statement Undisputed Facts, 6 at ¶ 8, Docket No. 70).

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) as made applicable in adversary proceedings pursuant to Fed. R. Bankr. P. 7056.

The moving party bears the initial burden of proof that no genuine issue for trial exists, with the burden then shifting to the opposing party to produce specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). Further, in examining materiality, "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *Regional Federal Sav. Bank v. Margolis,* 835 F. Supp. 356, 358 (E.D. Mich. 1993), citing *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 993 (1962). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992).

## III. THE SUBSTANTIVE LAW OF THE CASE

The Bankruptcy Trustee seeks to avoid the transfers made pursuant to the Settlement Agreement under 11 U.S.C. §§ 544(b), 550 and Tenn. Code Ann. §§ 66-3-306(b) and 66-3-305(a)(1). (Compl. ¶¶ 34-44, Docket No. 1). The pertinent provisions of 11 U.S.C. § 544(b) provide that the Bankruptcy Trustee may avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is

allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."

Under 11 U.S.C. § 550(a), to the extent a transfer is avoided under 11 U.S.C. §544, the Bankruptcy Trustee may recover the property, or its value, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.  Essentially, 11 U.S.C. § 544 allows a Trustee to avoid certain types of fraudulent transfers and 11 U.S.C. § 550 empowers the Trustee to recover the property transferred.  *Taunt v. Hertado (In re Hertado),* 342 F.3d 528, 531 (6th Cir. 2003).

The Uniform Fraudulent Transfers Act, referred to in the Bankruptcy Trustee's complaint more specifically as Tenn. Code Ann. §§ 66-3-305 (a)(1) and 66-3-306(b), states that transfers made or obligations incurred by a debtor are fraudulent, whether the creditor's claim arose pre- or post-transfer, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor.  Further, a transfer to an insider is fraudulent as to any creditor whose claim arose prior to the transfer if the transfer was made to the insider for an antecedent debt, the debtor was insolvent at the time of the transfer and the insider had reasonable cause to believe the debtor was insolvent.  11 U.S.C. § 544, in conjunction with the Tennessee Fraudulent Transfer Act, "allows the trustee to step into the shoes of a creditor in order to nullify transfers voidable under state fraudulent conveyance acts for the benefit of all creditors." *Hurtado*, 342 F.3d at 531-532 (citations omitted).

Comerica Bank, movant hereunder, states that the Bankruptcy Trustee, as a matter of law, is not entitled to any recovery in this instance because Comerica Bank was not a transferee from whom the Bankruptcy Trustee is entitled to recover under 11 U.S.C. § 550.[2]  "Recovery can only be had for a fraudulent conveyance under the U.S. Bankruptcy Code from (1) 'the initial transferee of such transfer,'

---

[2] The Court notes that neither Comerica Bank nor the Bankruptcy Trustee has addressed any other issues related to the underlying transfers which could arise in conjunction with 11 U.S.C. § 544 or applicable state law.  For purposes of this Opinion, the Court will only address the specific issue of whether the Bankruptcy Trustee may recover from Comerica under 11 U.S.C. § 550.

6

(2) 'the entity for whose benefit such transfer was made,' or (3) 'any immediate or mediate transferee of such intial transferee.' 11 U.S.C. § 550(a)(1) and (a)(2). No other recovery is possible." *Shapiro v. VPA, P.C. (In re Valley X-Ray Co.)*, 360 B.R. 254, 258-259 (E.D. Mich. 2007)(citations omitted). Comerica Bank alleges that it does not fit within any of the transferee categories which would make recovery possible.

While the Bankruptcy Code does not define "transferee," the Sixth Circuit has adopted what has been called the "dominion and control" test in order to determine if a party qualifies as a transferee for purposes of 11 U.S.C. § 550(a). *See Wheeling Pittsburgh Steel v. Keystone Metals Trading (In re Wheeling Pittsburgh Steel),* 360 B.R. 649 (Bankr. N.D. Ohio 2006)(citing *Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890 (7th Cir. 1988)). Under this test, a party must do more than merely touch a party's property, but rather the minimum requirement for status as a "transferee" is dominion over the property, i.e. the right to put the money to one's own purposes. *In re Wheeling Pittsburgh Steel,* 360 B.R. at 652.

The Sixth Circuit has stated that where a party is merely acting as an agent and has no "legal authority" or "legal title" to transferred funds, the party will not be found to be an initial transferee. *In re Hurtado,* 342 F.3d at 534. Such parties are instead "mere conduits," not exercising "dominion and control" over the transferred property and thus not liable under 11 U.S.C. § 550. *Id.* at n.2 (citing *In re Ogden,* 314 F.3d 1190, 1196 (10th Cir. 2002)).

The Bankruptcy Trustee argues that the degree of dominion and control Comerica exercised with regard to the trust assets is a material disputed fact which renders summary judgment inappropriate when viewed in a light most favorable to the Bankruptcy Trustee and drawing all reasonable inferences in the Bankruptcy Trustee's favor.

Sixth Circuit precedent indicates that in order to be a transferee from whom recovery may be had, a party must be more than a "mere conduit," but rather have "legal authority" or "legal title" to the

7

transferred assets. Analyzing the case in accordance with *Hurtado*, whether Comerica had "dominion and control" over the trust res to sufficiently render Comerica a transferee appears to be the lynchpin upon which Comerica's potential liability to the Bankruptcy Trustee rests. This determination will be the deciding factor in the Bankruptcy Trustee's case against Comerica.

The Bankruptcy Trustee argues that the degree of Comerica's dominion and control over the trust assets is a disputed fact. As set forth in the affidavit of Debra McCloskey, "Comerica resigned before any distribution decisions were made. Comerica never had or exercised dominion or control over the trust assets, including the assets received as a result of the Settlement Agreement and Mutual Release." (Separate Defendant Comerica Bank's Memorandum in Support of its Motion for Summary Judgment and Statement of Undisputed Facts, Ex. 1, p. 2 at ¶¶ 9 and 10, Docket No. 70). Later, in her deposition, Ms. McClosky admits that the Family Settlement Agreement, which terminated the MKN Trust and directed distributions as to the beneficiaries, was executed prior to Comerica Bank's resignation as Trustee. (Docket No. 70, unnumbered Exhibit "McClosky Deposition" at pp. 21-22). The Court finds that the affidavit and deposition of Debra McCloskey do appear to conflict. However, drawing every possible inference in the light most favorable to the Bankruptcy Trustee, this fact is not substantive to the outcome of the case. As set forth below, the powers and duties of Comerica Bank as trustee are clearly delineated by the Trust Document itself and there have been no allegations that Comerica Bank violated its duties as Trustee or engaged in self-dealing at any time.

### IV. COMERICA BANK'S POWERS AND DUTIES AS TRUSTEE

Comerica's powers as co-trustee were extensive and are not in material dispute. As set forth in Article 10 of the Second Amendment to and Restatement of the Marguerite K. Naughton Revocable Trust (the "Trust Document"), the Trustee has the power to invest and reinvest property, trade securities, operate businesses, form business entities and borrow money. More specifically, as set forth in Section 10.3, the Trustee has the power to "Deal with Property. [T]o do all acts, take all proceedings, and

exercise all rights and privileges, even though not herein specifically mentioned, with relation to property in any trust created hereunder *as if the absolute owner thereof.*" (Mem. Resp. Comerica Bank's Mot. Summ. J., Ex. 2 at p. 12, Docket No. 70)(second emphasis added).

In addition to the specific grant of powers as set forth in the Trust Document, Comerica, as a trustee, had legal title to the trust res. "Trust law provides that upon establishment of a trust, the legal title is held by the trustee whereas the equitable title rests with the beneficiary." *Grant v. Wells (In re Wells)*, 259 B.R. 776 (Bankr. M.D. Fla. 2001). *See also* 18 Fla. Prac., Law of Trusts § 3:6 (2008 ed.), "The inherent nature of a trust rests on a division of ownership of the trust res with equitable title in the beneficiary and legal title in the trustee."[3]

Despite the language of the Trust Document, Comerica Bank's powers as Trustee were not limitless. Article 9 of the Trust Document, Section 9.8 "Indemnity," provides that an individual trustee is not liable to beneficiaries or other persons for errors of judgment or losses to the trust unless caused by willful malfeasance or misfeasance. However, the same section specifically states, "These provisions shall not be applicable to a corporate Trustee serving hereunder." (Mem. Resp. Comerica Bank's Mot. Summ. J., Ex. 2 at p. 12, Docket No. 70). Comerica's powers then, were restricted by its potential liability to the Trust beneficiaries for its judgment and management decisions as trustee, as well as the fact that the equitable interest of the trust's assets remained with the beneficiaries.

There is no dispute that Comerica, as co-trustee, had a statutory fiduciary duty to the Trust's beneficiaries. "The terms of a trust prevail over any provision of this code except: (b) The duty of the trustee to act in good faith and in accordance with the terms and purposes of the trust and the interests

---

[3] The Court will look to the law of the State of Florida with regard to the legal status of the Trust/Trustee relationship. *See* Trust Document Section 11.1, "Situs. This Trust and each separate trust created hereunder shall be construed and regulated under, and all rights under them shall be governed by, the laws of the State of Florida.", *accord* Fla. Stat. Ann. § 736.0107(1) (West 2009), "The meaning and effect of the terms of a trust are determined by: (1) the law of the jurisdiction designated in the terms of the trust..."

9

of the beneficiaries." Fla. Stat. Ann. § 736.0105 (West 2009).  There have been no allegations that Comerica breached its fiduciary duties through its actions or decisions as co-trustee.  Comerica was acting within its authority as trustee in entering into the Settlement Agreement.  A trustee may "[P]ay or contest any claim, settle a claim by or against the trust, and release, in whole or in part, a claim belonging to the trust." Fla. Stat. Ann. § 736.0816(14)(West 2009).  There have been no allegations that Comerica acted in contravention of the authority granted to it by the Trust Document or by statute and there have been no facts presented to the Court which might indicate that Comerica acted for its own gain.  The Court finds this case to be factually distinguishable from other cases which found a party liable as an initial transferee.

*In re Hurtado* makes it clear that for a party to be an initial transferee, the party must have been transferred complete legal title to the funds.  Barbara Hurtado, in that case, was part of a scheme to completely divest the Debtors of any interest in the transferred funds so that the funds "could no longer be considered assets of the debtors." *Hurtado*, 342 F.3d at 535.  Even though Mrs. Hurtado only used the funds at the Debtors' direction, the Debtors retained no interest in the funds whatsoever.  The Sixth Circuit pointed out that Mrs. Hurtado not only had legal authority to do what she liked with the funds, she failed to demonstrate that the Debtors would have had any legal recourse if Mrs. Hurtado had chosen to use the funds for her own benefit.

*Hurtado* also distinguishes cases where the alleged transferee is under a legal obligation to follow the commands of a principal in disposing of the funds in question.   In *First Nat'l Bank of Barnsville v. Rafoth et. al (In re Baker & Getty Financial Services, Inc.),* 974 F.2d 712 (6th Cir. 1992) the Court found that even though funds were temporarily lodged in the alleged transferee's bank account, "in law the money was not his and he was simply acting at the direction of Cordek (the principal)."   As other courts have noted, the Sixth Circuit has rejected an expansive approach in addressing the scope of "initial transferee" status under 11 U.S.C. § 550(a). *In re Wheeling Pittsburgh*

10

*Steel,* 360 B.R. at 652.

Comerica had a legal obligation as trustee to follow the wishes of the trust grantor as set forth in Trust Document and Florida Statute. It did not have unfettered discretion to do with the funds what it wished nor did it have full dominion over the funds of the MKN Trust. As a matter of law, an equitable interest in the funds always remained with the beneficiaries of the Trust. The Sixth Circuit has made it clear that in order to find Comerica liable as an initial transferee, Comerica must have had complete title to the trust res as well as the authority to do whatever it wished with the funds, i.e. the "right to put the money to one's own purposes." *Id.* The Court is persuaded that "[I]t is contrary to the conception and purpose of a trust that the person designated as trustee be given absolute and unrestrained control over the property with the right to sell and use the proceeds of the sale as he may see fit without liability or accountability to a [beneficiary]." *Grant v. Wells (In re Wells),* 259 B.R. 776 (Bankr. M.D. Fla. 2001)(citations omitted).

The Bankruptcy Trustee has urged the Court, alternatively, to find that Comerica cannot be a "mere conduit" because "[w]hen the transferee is a creditor, or has a business relationship with the debtor, and it receives a transfer that is applied to its own debt, the transferee cannot be a conduit." *Doctors Hospital of Hyde Park, Inc. v. Desnick, et al.,*(In re Doctors Hospital of Hyde Park, Inc.), 373 B.R. 53, 73 (Bankr. N.D. Ill. 2007). This proposition makes sense in that for an entity to be a conduit, it must be a "pass through" for funds, rather than the ultimate depository of the funds.

The Bankruptcy Trustee alleges that because a judgment had been entered in the Florida Litigation prior to the execution of the Settlement Agreement, that Comerica was a judgment creditor of the Debtor. This mischaracterizes Comerica's role in the lawsuit. The lawsuit was brought, as stipulated above, by Michael D. Naughton and Comerica, as co-trustees of the MKN Trust, to recover monies and loans obtained by Debtor Kevin Naughton from Marguerite K. Naughton and the MKN Trust. Comerica was never a judgment creditor of the Debtor because the debt sued on was never an

obligation to Comerica. The Debtor was not sued in the Florida District Court to recover funds which were owed to Comerica, rather the Debtor was sued to recover funds owed to the MKN Trust. This differs profoundly from the factual scenario in *Doctors Hospital*.[4]

In the *Doctors Hospital* case, the Court specifically found that the initial transferee received a benefit from the payments it received. The alleged initial transferee, LaSalle Trust, was the recipient of rent payments from the Debtor which were then partially applied to a debt that was owed by HPCH, a limited partnership, to LaSalle Trust. LaSalle Trust's assets consisted of the HPCH mortgage and other securitized mortgages. LaSalle Trust was the owner of the underlying obligation owed by HPCH and thus, the court found, was a direct beneficiary of some part of the payments. LaSalle Trust in that case was the ultimate depository of the funds in question; the funds were owed to the Trust as memorialized by a specific mortgage that had been expressly assigned to the Trust. There is no question that LaSalle Trust was not a mere conduit because the partial payments that came into its hands remained there to its own benefit; they were not then passed on to another entity or used for the benefit of another entity.

In that case, the court stated "it must be concluded that the Trust was the initial transferee of payments." In the case *sub judice*, no facts have been alleged which would show that Comerica benefitted from executing the Settlement Agreement, notably the only fraudulent transfer alleged in the Bankruptcy Trustee's complaint in the record before the Court (See Complaint, ¶¶ 34-44, Docket No.1).

### V. CONCLUSION

The Court finds that based upon the record as set forth herein, summary judgment is appropriate in this matter. Viewing the evidence before the Court in the light most favorable to the Bankruptcy

---

[4] A thorough explanation of the facts in the *Doctors Hospital* case is set forth in *Doctors Hospital of Hyde Park, Inc. v. Desnick, et al.,* (In re Doctors Hospital of Hyde Park, Inc.), 360 B.R. 787 (Bankr. N.D. Ill. 2007). The Bankruptcy Trustee relies initially upon the court's opinion denying the motion to rehear, 3 *Doctors Hospital of Hyde Park, Inc. v. Desnick, et al.,* (In re Doctors Hospital of Hyde Park, Inc.), 73 B.R. 53 (Bankr. N.D. Ill. 2007).

Trustee and drawing all inferences in the Bankruptcy Trustee's favor, the Court finds that there remain no disputed issues of material fact with regard to Comerica Bank's powers and actions as Trustee of the MKN Trust.  Based upon the record before it, the Court finds that Comerica Bank did not exercise the requisite dominion and control over the trust res as would be necessary for it to be considered an initial transferee under 11 U.S.C. § 550.

For the reasons set forth herein the motion of Comerica Bank for summary judgment is **GRANTED.**  The Court will enter a separate order consistent with this opinion.